*1147 OPINION.
Trussell :
The controversy over the amount of depreciation which this taxpayer should be allowed as a deduction from gross income for the years 1919 and 1920 apparently arises from the fact that the company’s own books of account separate its depreciable properties into two parts, the original construction being carried on the books as a “ construction ” account, while the extension into deep water is carried as a “wharf” account; and the taxpayer claims that the estimated life of the entire property should be treated as a unit and should be considered as not to exceed 10 years. It appears, however, from the testimony taken at the hearing that the original structure which was built in the year 1917, is now, in 1925, approximately eight years after its construction, still in good condition; is performing the same service to the company as it originally performed, and, so far as can be determined from the evidence, is good for practical use for some years to come. The claim of a 10 per cent depreciation upon the original construction, therefore, does not seem to be well founded. We are thus led to the conclusion that the rates of 4 per cent upon the original construction and 10 per cent upon the new construction over deep water, together produces a fair rate of depreciation and a reasonable allowance for exhaustion as applied to the entire property, and the Commissioner’s decision in reference to this issue should be approved.
The evidence furnished in this hearing shows conclusively that when, on or about November 8, 1919, the taxpayer planned to increase its plant, and Middleton & Company advanced the funds for the purpose of purchasing the property desired to be acquired, it was understood and agreed by all parties in interest that the funds so advanced should be an addition to the capital of the taxpayer company, and that immediately thereafter the necessary steps were taken which authorized the issuance of additional capital stock. Such steps were carried to completion at the earliest practicable date and, when proper authority to issue additional stock was procured, stock certificates evidencing the payments of $60,000 were duly issued.
It was clearly the purpose of the framers of the Revenue Act of 1918 to provide that all moneys actually paid in to a corporation as a contribution toward the capital of such corporation should be treated as invested capital from the time paid in, and the record of this appeal shows that the $60,000 was paid in on the third day of November, 1919. We are, therefore, of the opinion that it must be treated as an addition to the invested capital of the company on that date.